JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Crystal Bogdan ("Bogdan"), appeals from a decision of the trial court that granted defendant-appellee, Ford Motor Company's ("Ford"), motion for summary judgment on Bogdan's claims. Upon review, we conclude that there are no genuine issues of material fact and that Ford is entitled to judgment as a matter of law on Bogdan's claims. Accordingly, we affirm the trial court's decision.
 {¶ 2} A review of the record reveals the following facts: Bogdan is a 30-year-old female who was employed in Ford's electrician apprenticeship program from November 4, 2000 through September 24, 2002. The electrician apprenticeship program is offered by Ford to train individuals to become electricians at the Brook Park, Ohio facility. In order to qualify for the program, Bogdan had to take a written examination and receive a recommendation from a Ford employee. Bogdan was one of eight individuals selected for the program. Of the eight individuals, two were female. Bogdan was allowed to enter the program after a male apprentice was removed from the program for performance deficiencies.
 {¶ 3} As part of the program, the apprentices are required to complete 9,036 hours of training, which generally takes about four years to complete. This training consists of on-the-job-training working directly with Ford's journeymen electricians, as well as classroom courses at Lorain County Community College. The apprentices are required to complete a Task Book, which outlines the tasks that must be performed by the apprentice before becoming a journeyman electrician. Once an apprentice completes a task, he or she must sign the book along with the journeyman electrician to demonstrate the apprentice's proficiency in the area.
 {¶ 4} The apprenticeship program is administered by the Joint Apprenticeship Committee ("JAC"), a committee comprised on union members and Ford management personnel. Defendants James Kravec, Gary Hall, Thomas Fiffick, Malcolm Waddle, Richard Elder, Daniel Pozek and Jean Brooks-Rodgers comprised the JAC during the relevant period. The JAC has the power to terminate apprentices upon a unanimous vote of all voting members.[1]
 {¶ 5} As part of the apprenticeship program, the apprentices receive evaluations from the journeymen. These evaluations generally occur after an apprentice has spent two or three months working in an area. The evaluations are in writing and are prepared directly by the journeyman or a member of the JAC while meeting with the journeyman.
 {¶ 6} On August 24, 2001, Bogdan received her first apprentice evaluation. She received an overall score of "11" (Unsatisfactory — Fails to meet performance established by Ford and the IBEW). The evaluation contained four "Satisfactory" ratings in the areas of Bogdan's technical knowlege, workmanship, cooperation and safety, and three "Unsatisfactory" ratings in the areas of Bogdan's independence, dependability, and motivation. Bogdan also received a rating between "Satisfactory" and "Unsatisfactory" in the area of judgment. The written comments were as follows:
"Apprentice needs to become more focused on the job and not personnel like. Needs to know that the goal is to become independent and is not going to be an apprentice forever. Needs to become more assertive and not hang back waiting for direction but get involved in the discussion of a given job."
 {¶ 7} On August 31, 2001, Bogdan was placed on probation. On January 10, 2002, Bogdan received her second apprentice evaluation. She received an overall score of "13" (Unsatisfactory — Fails to meet performance established by Ford and the IBEW). The evaluation showed improvement in the areas of safety (an "Excellent" rating) and workmanship and cooperation (two "Good" ratings). The evaluation contained one "Satisfactory" rating in the area of Bogdan's dependability, and four "Poor" ratings in the areas of Bogdan's technical knowledge, independence, judgment, and motivation. The written comments were as follows:
"Needs to be more assertive. Needs to ask more questions. Must show more interest in her task/learning process. Does not anticipate journeymans next move well. Crystal does
perform her task well when guided thru it. Her workmanship is neat and thorough. Her fear of making a mistake inhibits her independence." (Emphasis in original).
 {¶ 8} On July 9, 2002, Bogdan received her third apprentice evaluation. She received an overall score of "12" (Unsatisfactory — Fails to meet performance established by Ford and the IBEW). The evaluation contained one "Excellent" rating in the area of safety, two "Satisfactory" ratings in the areas of workmanship and cooperation, two "Unsatisfactory" ratings in the areas of Bogdan's independence and dependability, and three ratings between "Satisfactory" and "Unsatisfactory" in the areas of technical knowledge, judgment, and motivation. The written comments were as follows:
"Crystal has been good with her attendance, never a problem. She responds to pages and gets to the job in a timely manner. Crystal has progressed, but not to the extent anticipated. At this point she is not at the level of other apprentices who have passed through the area. Crystal is quite slow in performing manual tasks, in particular, climbing into a machine and replacing prop switches and cables. She seems hesitant, or unsure of what we're trying to do at times, and needs to be told. Crystal is coming around with the usage of taschpendents, and working with the PLC. Crystal needs to take charge more in the troubleshooting. She seems to be somewhat unsure of how to proceed in a logical manner. She seems to be getting more comfortable with the area, but she is still a ways from being where she should be at this time."
 {¶ 9} On September 24, 2002, Bogdan's probation was terminated, she was removed from the apprenticeship program and her employment was terminated.
 {¶ 10} On May 9, 2003, Bogdan filed this complaint against Ford and individual members of the JAC alleging claims of gender discrimination and wrongful discharge in violation of Ohio's public policy.
 {¶ 11} On October 13, 2004, Bogdan voluntarily dismissed her claim for wrongful discharge in violation of Ohio's public policy, without prejudice.
 {¶ 12} On June 23, 2005, the trial court granted Ford's motion for summary judgment. It is from this decision that Bogdan now appeals and raises one assignment of error for our review.
 {¶ 13} "I. The trial court erred in granting defendants-appellees' motion for summary judgment with respect to plaintiff-appellant's gender discrimination claim."
 {¶ 14} In her sole assignment of error, Bogdan claims that the trial court erred in granting summary judgment in favor of Ford because genuine issues of material fact existed concerning her claim for gender discrimination.
 {¶ 15} An appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. "De novo review means that this Court uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial." Brewer v. Cleveland CitySchools (1997), 122 Ohio App.3d 378; citing Dupler v. MansfieldJournal (1980), 64 Ohio St.2d 116, 119-120.
 {¶ 16} Summary judgment is appropriate where it appears that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
 {¶ 17} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant has no evidence to support his claims.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.
 {¶ 18} With these principles in mind, we proceed to consider whether the trial court's grant of summary judgment in Ford's favor was appropriate.
 {¶ 19} In order to prevail in an employment discrimination case, Bogdan must prove discriminatory intent. Mauzy v. KellyServices, Inc. (1996), 75 Ohio St.3d 578, 587-588. Discriminatory intent may be proven either directly or indirectly. Byrnes v. LCI Communication Holdings Co. (1996),77 Ohio St.3d 125, 128-129. A plaintiff that seeks to prove discrimination by direct evidence "must prove a causal link or nexus between evidence of a discriminatory statement or conduct and the prohibited act of discrimination to establish a violation." Id. at 130.
 {¶ 20} Here, Bogdan complains of approximately five instances of direct discriminatory conduct toward her over a span of two years: (1) Regis Zoretich told her to "get [her] fat ass in the gym and work out;" (2) James Kravec told her to clean the shop; (3) Fiffick and Elder told her that she did not know enough about the electrical trade and she was going to hurt herself or others; (4) Fiffick was irritated that she forgot her Task Book; and (5) Elder rushed her to an apprentice meeting when she was running late.
 {¶ 21} These remarks, even if true, are insufficient to show direct evidence of discrimination. First, Zoretich was not a member of the JAC and had no authority to make any decisions regarding her employment with Ford. Thus, Bogdan can show no causal connection between his isolated statement and her termination. See Bush v. Dictaphone Corp., 161 F.3d 363, 369
(C.A. 6, 1998) (statements by non-decisionmakers cannot suffice to satisfy plaintiff's burden of demonstrating animus). Next, Kravec's comments are not evidence of gender discrimination, since Bogdan admits that male apprentices were required to clean up the shop as well. Finally, Fiffick's and Elder's comments and actions are not direct evidence of gender discrimination, since they were in no way related to her gender. Creech v. Ohio Cas.Ins. Co., 944 F.Supp. 1347, 1358-59 (S.D. Ohio 1996) (gender-neutral comments are insufficient to show discriminatory animus). Without evidence of a causal link, Bogdan has not provided proof of discriminatory intent using direct evidence.
 {¶ 22} Although Bogdan cannot establish discrimination with direct evidence, she may prove her case under the indirect method, which permits her to establish discriminatory intent through the analysis set forth in McDonnell Douglas Corp. v.Green (1973), 411 U.S. 792, 36 L.Ed.2d 668, 93 S.Ct. 1817. In order to set forth a prima facie case of gender discrimination, Bogdan must show: (1) she is a woman; (2) she was discharged; (3) she was qualified for the position; and (4) that her discharge enabled Ford to hire a man. Brewer v. Cleveland Bd. of Ed.
(1997), 122 Ohio App.3d 378.
 {¶ 23} Once a prima facie case of discrimination is established, Ford may overcome the presumption by coming forward with a legitimate, nondiscriminatory reason for the discharge.Kohmescher v. Kroger Co. (1991), 61 Ohio St.3d 501. Bogdan must then present evidence that Ford's proffered reason was a mere pretext for unlawful discrimination. Manofsky v. Goodyear Tire Rubber Co. (1990), 69 Ohio App.3d 663, 668. Bogdan's burden is to prove that Ford's reason was false and that discrimination was the real reason for the discharge. Wagner v. Allied Steel Tractor Co. (1995), 105 Ohio App.3d 611, 617. Mere conjecture that Ford's stated reason is a pretext for intentional discrimination is an insufficient basis for the denial of a summary judgment motion made by Ford. To meet her burden in response to such a summary judgment motion, Bogdan must produce some evidence that Ford's proffered reasons were factually untrue. Powers v. Pinkerton, Inc. (Jan. 18, 2001), Cuyahoga App. No. 76333.
 {¶ 24} Here, Bogdan has failed to demonstrate a prima facie case of gender discrimination. While she has established the first and second element, i.e., she is a woman and was terminated from her position, she has failed to demonstrate that she was qualified for the position and that the position held by her was given to a male or that males received preferential treatment.
 {¶ 25} First, Bogdan cannot show that she was qualified for the position. During her tenure with Ford, she had mastered only 22 out of a total 86 tasks in the Task Book and received three "Unsatisfactory" overall reviews. She was placed on probation for over one year and still did not improve.
 {¶ 26} A review of the other apprentices' evaluations show that they all received "Satisfactory" or "Excellent" overall scores. Indeed, the only other female apprentice, Barbara Bradish, received "Excellent" overall scores with exceptional comments regarding her work ethic, technical skills, and ability to work independently.
 {¶ 27} Bogdan's evaluations were comparable to the evaluations of Sam Sedlak, the apprentice that Bogdan replaced and who was removed from the program for performance deficiencies. Both Sedlak and Bogdan received low overall scores and comments indicating a lack of technical skills and lack of motivation and interest in the job. Sedlak had also been placed on probation but had been terminated from the position after his evaluation showed no improvement within several months. Contrast this with Bogdan, who was allowed to remain on probation for over one year and was ultimately terminated after she received her third "Unsatisfactory" review. Accordingly, Bogdan cannot meet the third element of her prima facie case.
 {¶ 28} Next, Bogdan cannot show that she was replaced by a male or that similarly situated males were treated better. First, Bogdan was not replaced by anyone in the apprenticeship program. Next, she cannot show that she was subjected to different standards and requirements. Indeed, the record shows that several other males, including Sam Sedlak, were terminated from the program for performance problems similar to Bogdan. A review of all the evaluations show that although several of the male apprentices received negative comments throughout their apprenticeship, each of these males received overall "Acceptable" or "Excellent" ratings for the quality and accuracy of their work. Bogdan's evaluations show that she had serious performance deficiencies throughout her apprenticeship. Bogdan cannot show that she was treated differently from similarly situated males, because, in fact, she was treated the same as similarly situated males: she was terminated from the program like they were. Therefore, Bogdan cannot meet the fourth element of her prima facie case.
 {¶ 29} Even assuming arguendo that Bogdan could establish a prima facie case, Ford has established legitimate non-discriminatory reasons for its actions, which she cannot show to be pretextual. Specifically, Ford has presented substantial evidence that Bogdan received numerous unsatisfactory evaluations and that she was simply not qualified to continue in the program.
 {¶ 30} Bogdan argues that she presented the affidavits of six journeymen who testified that her work was satisfactory or better.
However, Ford presents evidence that four of the six journeymen were not qualified to evaluate Bogdan, since they had only worked with her for two weeks or less. The JAC requires that journeymen work with an apprentice for two to three months to ensure that the journeymen have sufficient exposure to an apprentice to meaningfully evaluate the abilities and avoid evaluations for small tasks. Of the two that were qualified to evaluate Bogdan, one (Siba) testified that he never evaluates anyone, male or female, and one (Eakins) admitted that he would not have been able to fairly evaluate her until she had six months or more experience.
 {¶ 31} The evidence shows that Bogdan cannot establish the elements necessary to support her claim of gender discrimination. Her probation and termination were based on her poor performance in the apprenticeship program and her continuing problems with lack of interest and motivation to learn the electrical trade. Accordingly, the trial court did not err in granting Ford's motion for summary judgment on Bogdan's claim for gender discrimination.
 {¶ 32} Bogdan's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
McMonagle, J., and Blackmon, J., concur.
[1] Jean Brooks-Rodgers did not vote on such issues, she only handled the administrations of the JAC.