*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to
6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name:  07b0010n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re:   KARL EDWIN MAY, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| PRIM CAPITAL CORPORATION, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | No. 06-8044 |
| | ) | |
| v. | ) | |
| | ) | |
| KARL EDWIN MAY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, at Cleveland
No. 05-10521; Adv. No. 06-8044

Submitted:  February 7, 2007

Decided and Filed:  July 19, 2007

Before: AUG, LATTA, and PARSONS, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:**  Demetrios P. Koutrodimos, Cleveland, Ohio, for Appellant.  Paul A. Bayer, Mayfield
Heights, Ohio, for Appellee.

----------------------

**OPINION**

----------------------

J. VINCENT AUG., JR., Bankruptcy Appellate Panel Chief Judge. Prim Capital Corporation ("Prim") filed an adversary complaint seeking a finding that a debt owed by the chapter 7 debtor, Karl May ("Debtor"), is nondischargeable pursuant to § 523(a)(2) and (a)(6) of the Bankruptcy Code. The bankruptcy court granted summary judgment in favor of the Debtor, and Prim appeals that order. We affirm the decision of the bankruptcy court.

## I. ISSUES ON APPEAL

The issues raised by this appeal are: (1) whether there were genuine issues of material fact precluding summary judgment; (2) whether the bankruptcy court erred in refusing to consider Prim's alternative theory of nondischargeability first raised at the summary judgment stage; and (3) whether the bankruptcy court erred in refusing to permit additional discovery beyond the discovery deadline.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("BAP") has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP and a final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). An order granting summary judgment for the only defendant is a final order. *Wicheff v. Baumgart (In re Wicheff)*, 215 B.R. 839 (B.A.P. 6th Cir. 1998).

The bankruptcy court's grant of summary judgment is reviewed *de novo*. *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001). *De novo* review requires the "appellate court [to determine] the law independently of the trial court's determination." *O'Brien v. Ravenswood Apartments, Ltd. (In re Ravenswood Apartments, Ltd.)*, 338 B.R. 307, 310 (B.A.P. 6th Cir. 2006) (citing *In re Periandri*, 266 B.R. at 653). Essentially, the reviewing court

decides the issue as if it had not been heard before. *In re Marketing & Creative Solutions, Inc.*, 338 B.R. 300, 302 (B.A.P. 6th Cir. 2006). No deference is given to the trial court's conclusions of law. *Id.*

A bankruptcy court's refusal to permit additional discovery is reviewed for abuse of discretion. *Official Unsecured Creditors Comm. of Valley-Vulcan Mold Co. v. Ampco-Pittsburgh Corp. (In re Valley-Vulcan Mold Co.)*, 237 B.R. 322, 326 (B.A.P. 6th Cir. 1999) (citing *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998)). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Volvo Commercial Fin. LLC the Americas v. Gasel Transp. Lines, Inc. (In re Gasel Transp. Lines, Inc.)*, 326 B.R. 683, 685 (B.A.P. 6th Cir. 2005) (citing *Schmidt v. Boggs (In re Boggs)*, 246 B.R. 265, 267 (B.A.P. 6th Cir. 2000)). The bankruptcy court's decision, under this standard, will only be disturbed if it "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Elec. Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003) (citing *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997)). *See also Mayor & City Council of Baltimore, Md. v. West Virginia (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002). The reviewing court must ask "whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Id*. at 529.

## III.  FACTS

The Debtor is an attorney who represented Prim from 1997 to 2003. In late 2000, the Debtor left his employment as a shareholder with the law firm Brouse McDowell to serve as general counsel for Prim at the request of Prim's chief operating officer, Joseph Lombardo ("Lombardo"). At approximately the same time, the Debtor joined the law firm of Doepken, Keevican, & Weiss ("DKW") as "of counsel." Prim provided the Debtor with office space but did not pay him a salary. Lombardo allegedly offered to refer clients to the Debtor but never guaranteed any such referrals. The Debtor also did not receive a salary from DKW but rather was working under a fee-splitting agreement.

At or around the time the Debtor began his employment with Prim, the Internal Revenue Service assessed substantial back taxes to the Debtor. Prim, through Lombardo, assisted the Debtor in obtaining a one-year, $100,000 loan from Huntington Bank. The Debtor contends that because he did not receive a salary from either employer, he needed the loan to pay the IRS tax assessment as well as for monthly living expenses and escalating expenses due to his daughter's ice skating career. The Debtor further contends that the loan was essentially obtained in lieu of a salary. Prim, however, asserts that it understood the money was needed solely to pay taxes.

Although Prim was the obligor on the loan, the money was wired directly to the Debtor. The parties dispute who was to repay the loan. The Debtor contends he was to make payments on the loan only from legal fees he earned as a result of referrals from Prim. If no such fees were forthcoming, Prim would make the loan payments. Prim contends that the Debtor was to repay the loan in full and asserts that the Debtor represented that he could repay the loan with fees he expected to receive from the impending settlement of a case. The Debtor disputes having made such a statement.

When the loan was not repaid according to its terms, the loan was restructured and converted into an installment loan in September 2002 with the Debtor as obligor and Prim, Lombardo, and other principals of Prim as guarantors. One of Prim's principals, Michael Brady, pledged his personal home as security for the restructured loan. Prim contends that the Debtor promised to pledge his own home as substitute collateral but failed to do so. The Debtor denies making such a representation to Prim. The Debtor made several payments on the restructured loan but ultimately defaulted in December 2003. On January 21, 2004, Huntington Bank obtained a judgment against the Debtor, Prim and the other obligors in the amount of $83,458.18. Prim then satisfied the judgment.[1]

In March 2004, Prim sued the Debtor in state court to recover the funds paid to satisfy the judgment. On January 16, 2005, during the pendency of the state court litigation, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. On February 25, 2005, Prim

---

[1]Apparently, Lombardo loaned Prim the funds with which to pay the judgment. According to the affidavit of Prim's certified public accountant, the repayment of the note was treated as a corporate obligation of Prim and not a personal obligation of Lombardo. (J.A. at Entry 29, Ex. 6.)

filed an adversary proceeding alleging that the debt owed to it by the Debtor was nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The Debtor moved to dismiss the complaint for failure to state a claim and for failure to plead with particularity. Finding that the complaint did not meet the special pleading requirements of Federal Rule of Bankruptcy Procedure 7009, the bankruptcy court ordered Prim to amend its complaint.

On July 19, 2005, the bankruptcy court held a status conference at which a discovery deadline of October 19, 2005, was set. On August 19, 2005, Prim filed its amended complaint, which included an allegation that the obligation was not dischargeable under § 523(a)(2). The Debtor again filed a motion to dismiss on the same grounds he had pled earlier. The Debtor also moved to disqualify Prim's counsel because he was the Debtor's own counsel of record in a foreclosure case.

On October 18, 2005, the bankruptcy court extended the discovery deadline at the joint request of the parties. On November 9, 2005, the bankruptcy court granted the Debtor's motion to disqualify Prim's counsel and ordered new counsel to file a second amended complaint in response to the second motion to dismiss.

In Prim's second amended complaint, filed on December 7, 2005, Prim contended that the Debtor made the following material misrepresentations upon which it reasonably relied in agreeing to obtain and guarantee the loan with Huntington Bank: (1) the Debtor needed the money to resolve his tax obligation; (2) the Debtor could repay the loan within a year with fees he expected to receive from the impending settlement of a case; and (3) the Debtor would replace his own home for Brady's as collateral. Finally, Prim alleged that the Debtor knowingly, maliciously and intentionally failed and refused to repay the loan that Prim guaranteed.

In a scheduling order entered February 2, 2006, the bankruptcy court set a discovery deadline of March 15, 2006. After this deadline, Prim filed a motion to compel the Debtor to produce additional documents relating to his financial condition. The Debtor objected to the motion, with the bankruptcy court considering the matter in a telephonic hearing on April 24, 2006. During the hearing, the court held that discovery was closed and that no additional discovery would be ordered or permitted.

On April 13, 2006, the Debtor moved for summary judgment, asserting that Prim had failed to produce any evidence that the Debtor's statements with respect to his tax obligation were false. The Debtor also contended that Prim had failed to produce evidence that the Debtor ever stated he would be able to repay the loan using expected settlement fees. Lastly, the Debtor asserted that he never promised to pledge his house as collateral on the restructured loan.

Rather than specifically responding to the assertions in the Debtor's motion for summary judgment, Prim responded with a seemingly new theory of nondischargeability under § 523(a)(2)(B) via 11 U.S.C. § 509. Prim alleged that the Debtor provided Huntington Bank with personal written financial statements in connection with the loans that contained numerous falsehoods. Prim further argued that because Prim satisfied the loan, it was subrogated to Huntington Bank's rights pursuant to § 509. Accordingly, Prim claimed that it could assert any nondischargeability claim against the Debtor that Huntington Bank could have asserted. Moreover, Prim asserted that the Debtor intended to deceive Huntington Bank by supplying the allegedly false statements and that the bank reasonably relied upon those misrepresentations in providing the loans.

In a memorandum opinion and order entered August 14, 2006, the bankruptcy court found that the Debtor's allegedly false statements were all made orally and, therefore, were not actionable under § 523(a)(2)(B). Additionally, the court found that 11 U.S.C. § 523(a)(2)(A) did not apply because, with the exception of the statement regarding the home as collateral, the statements were with respect to the Debtor's financial condition. In regard to the statement regarding the home as collateral, the bankruptcy court found that Prim brought forth no evidence that such a statement was made and made no mention of the claim in its response to the Debtor's motion for summary judgment.

The bankruptcy court further declined to consider the Debtor's financial statements given to Huntington Bank under § 523(a)(2)(B) because the financial statements were never mentioned in the pleadings and could only be introduced if § 509 applied. Because § 509 had not previously been pled, the bankruptcy court held that Prim's subrogation argument was not properly before the court. The court, however, elaborated that even if it were to consider the theory, summary judgment would still be granted because Prim satisfied the Huntington Bank judgment prepetition and, therefore, could not claim subrogation under § 509. This timely appeal followed.

# IV.    DISCUSSION

Summary judgment in adversary proceedings is governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates Rule 56 of the Federal Rules of Civil Procedure.  As previously recognized by the BAP, the Court of Appeals for the Sixth Circuit has succinctly described the standard to grant a motion for summary judgment as follows:

> A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Under this test, the moving part may discharge its burden by "pointing out to the [bankruptcy] court . . . that there is an absence of evidence to support the nonmoving party's case."  The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial.  Although we must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its complaint.  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."

*Gibson v. Gibson (In re Gibson),* 219 B.R. 195, 198 (B.A.P. 6th Cir. 1998) (citing *Hall v. Tollett,* 128 F.3d 418, 421-22 (6th Cir.1997) (internal citations omitted)) (alterations in *Gibson*).

A material fact is one whose resolution will affect the determination of the underlying action. *Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.,* 88 F.3d 1466, 1472 (6th Cir. 1996). An issue is genuine if a rational trier of fact could find in favor of either party on the issue.  *Schaffer v. A.O. Smith Harvestore Prods., Inc.,* 74 F.3d 722, 727 (6th Cir. 1996) (citation omitted).  "The substantive law determines which facts are 'material' for summary judgment purposes." *Hanover Ins. Co. v. American Eng'g Co.,* 33 F.3d 727, 730 (6th Cir. 1994) (citations omitted).

When deciding a case at the summary judgment stage, courts must be cautious in determining issues that involve a person's state of mind. *Wilson v. Seiter*, 893 F.2d 861, 866 (6th Cir. 1990).  In fact, summary judgment is "particularly inappropriate" when an individual's intent is at issue. *Marohnic v. Walker*, 800 F.2d 613, 617 (6th Cir. 1986).  However, as shown in the discussion below, because of a lack of evidence, we never get to the point where we must examine the Debtor's intent in this case.  Instead we rely on the Debtor's uncontested affidavit and deposition testimony.  In

determining whether each party has met its burden, the court must keep in mind that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553 (1986).

Dischargeability under § 523(a)(2)(A)

After an individual debtor files for chapter 7 relief, a court discharges all of the debtor's pre-existing debts. *See* 11 U.S.C. § 727. The Bankruptcy Code, however, prohibits the discharge of debts that are incurred as a result of the debtor's fraudulent actions or statements. 11 U.S.C. § 523(a)(2). The Bankruptcy Code provides a list of actions or statements that will prevent a debtor from obtaining a discharge.

Section 523(a)(2) provides, in pertinent part:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –

. . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

   (B) use of a statement in writing –

      (i) that is materially false;

      (ii) respecting the debtor's or an insider's financial condition;

      (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

      (iv) that the debtor caused to be made or published with intent to deceive; . . .

11 U.S.C. § 523(a)(2). Subsections (A) and (B) are mutually exclusive. All statements regarding a debtor's financial condition, whether written or oral, are expressly excluded from subsection (A). *Armbrustmacher v. Redburn (In re Redburn)*, 202 B.R. 917, 924 (Bankr. W.D. Mich. 1996) (citing, *inter alia*, *Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh)*, 973 F.2d 1454, 1457 (9th Cir. 1992)). Rather, such a creditor must proceed under subsection (B) and satisfy

the requirement that the statement of financial condition be in writing. A debt based upon an oral misrepresentation of financial condition is not actionable and will be dischargeable. Conversely, a debt obtained through fraudulent written statements about a debtor's financial condition will be nondischargeable. As a result of this construction, whether a debt under this section is dischargeable or nondischargeable depends on whether the fraudulent misrepresentation (i) is oral or in writing and (ii) whether the statement concerns the debtor's financial condition.

In the case presently before this Panel, the alleged statements were oral so Prim must proceed under subsection (A). The second consideration under § 523(a)(2)(A) is whether the Debtor's oral statements related to his financial condition.

Determining Whether Statements are Related to the "Financial Condition" of the Debtor

The phrase "respecting the debtor's . . . financial condition" is not defined in the Code and is thus subject to interpretation. The Court of Appeals for the Sixth Circuit has not directly addressed this issue. The Sixth Circuit has, however, implied that statements showing a debtor's net worth are statements respecting an individual's financial condition. *See Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 89-90 (6th Cir. 1993) (explaining that a debtor made "'statements in writing respecting the debtor's or an insider's financial condition' . . . because [the debtor] submitted written statements at the closing which plainly showed his net worth"). In the absence of binding precedent in this jurisdiction, a review of other circuit court opinions addressing this issue is instructive.

Few circuit courts have directly addressed this issue. Two views have emerged on the proper interpretation of the phrase "respecting the debtor's . . . financial condition." The "broad interpretation" includes any communication that has a bearing on the debtor's financial position. In other words, any communication addressing the status of a single asset or liability qualifies. *See Cadwell v. Joelson (In re Joelson)*, 427 F.3d 700, 705 (10th Cir. 2005), *cert. denied __ U.S. __ , 126 S. Ct. 2321 (2006). The "strict interpretation," on the other hand, limits statements "respecting the debtor's . . . financial condition" to communications that purport to state the debtor's overall net worth, overall financial health, or equation of assets and liabilities. *See id.* at 705.

The Fourth Circuit has adopted the broad interpretation. *Engler v. Van Steinburg (In re Van Steinburg)*, 744 F.2d 1060 (4th Cir. 1984). Meanwhile, the Eighth Circuit provides support for the strict interpretation. *Rose v. Lauer (In re Lauer)*, 371 F.3d 406, 413-14 (8th Cir. 2004). Likewise, the Tenth Circuit in a detailed opinion also has adopted the strict interpretation. *Joelson*, 427 F.3d at 705.

The strict interpretation, limiting statements concerning the debtor's financial condition only to those that actually claim to state the debtor's overall financial health, net worth or assets and liabilities, is most consistent with the text and structure of the Bankruptcy Code. In *Joelson*, the Tenth Circuit engaged in an exhaustive analysis of § 523(a)(2)(A) and (B). The Tenth Circuit explained that oral communication is somewhat less reliable than written statements because oral statements are often made spontaneously and without careful consideration. *Id.* at 707. Accordingly, "it is logical to give more leeway (and more dischargeability) to a debtor who errs in stating his or her overall position orally, since it is more likely that he or she may have made a mistake inadvertently." *Id.* Likewise, a debtor who misrepresents his or her overall financial condition in writing, does not deserve more dischargeability since written communications are generally more formal and allow a debtor to consider his or her statements more carefully. *Id.*

A broad interpretation simply brings too many statements under the rubric "concerning the debtor's financial condition," rendering the limitation meaningless. *See Joelson*, 427 F.3d at 710-11.

> The operative terms in § 523(a)(2)(A), . . . , 'false pretenses, a false representation, or actual fraud,' carry the acquired meaning of terms of art. They are common-law terms, and, . . . , they imply elements that the common law has defined them to include.

*Field v. Mann*, 516 U.S. 59, 69, 116 S. Ct. 437 (1995) (citations omitted). In fact, "if the phrase 'respecting the debtor's . . . financial condition' were given a broad reading, the resulting exclusion might eliminate coverage for many misrepresentations typical of the common-law torts that *Field* represents as lying at the heart of [§] 523(a)(2)(A)." *Joelson*, 427 F.3d at 710 (citing *Field*, 516 U.S. at 68–69) (explaining that § 523(a)(2)(A) refers mainly to common-law torts set forth in § 523(a)(2)(A)). A broad interpretation of the phrase "concerning the debtor's . . . financial condition" would allow debts incurred as a result of these common-law torts to be dischargeable.

*Joelson*, 427 F.3d at 710.  That result is not in line with the Court's analysis in *Field*.  *See id*. at 710–11.

There is support in the Bankruptcy Code for a narrow construction of the phrase "concerning the debtor's . . . financial condition" that would define the term as relating only to information on the debtor's overall financial condition.  *Id*. at 706.  The term "insolvent," as defined in the Code, refers to the "financial condition such that the sum of [an] entity's debts is greater than all of such entity's property . . . exclusive of [certain types] of property."  11 U.S.C. § 101(32)(A).  The Code also defines a municipality's insolvency as the financial condition such that the municipality fails or is unable to pay its debts as they come due.  11 U.S.C. § 101(32)(C).  The use of the term financial condition to describe insolvency suggests that the term financial condition "relates to a debtor's net worth or overall financial condition."  *Joelson*, 427 F.3d at 707-08.  Thus, a narrow interpretation, defining financial condition as statements that are made regarding a debtor's overall net worth, assets and liabilities, best adheres to the meaning and purpose of the Bankruptcy Code and is the interpretation that we adopt.

Application of the Narrow Interpretation

In the present case, the bankruptcy court analyzed three oral statements that the Debtor allegedly made to Prim: (1) that the Debtor needed the loan to satisfy a large tax assessment; (2) that the Debtor would be able to repay the loan with proceeds from an expected large settlement; and (3) that the Debtor promised to pledge his own house as collateral.

The bankruptcy court determined that the first two statements related to the Debtor's financial condition and were, therefore, dischargeable since they were not in writing.  We find, however, that neither of the first two statements is in respect of the Debtor's financial condition as we strictly interpret that phrase.  Regarding the first statement, no conclusions can be drawn about the Debtor's net worth, overall financial health or equation of assets or liabilities from the simple statement that a loan is needed to satisfy a tax obligation.  That is a statement about only one of the Debtor's liabilities and not the Debtor's overall financial condition.  Similarly, the second statement is not related to the Debtor's overall financial health but is again related to a single debt and the potential of one source of income.

With respect to the third statement, we agree with the bankruptcy court's analysis that Prim's allegation that the Debtor promised to pledge his own house as collateral is not related to the Debtor's overall financial condition.

Therefore, we conclude that each of the Debtor's oral statements is subject to being evaluated under § 523(a)(2)(A).

Analysis of Whether Bankruptcy Court Erred in Granting Summary Judgment

Once a statement is determined to be in the scope of § 523(a)(2)(A), additional analysis is necessary to determine whether the debt is excepted from discharge. To except a debt from discharge under § 523(a)(2)(A), the creditor must prove that: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss. *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998). The creditor must prove each of these elements by a preponderance of the evidence. *Id.* at 281 (citing *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 661 (1991)). Exceptions to discharge are to be strictly construed against the creditor. *In re Rembert*, 141 F.3d at 281.

A nonmoving party may not rest upon its allegations but must set forth specific facts supported by admissible evidence in the form of affidavits, depositions, answers to interrogatories or admissions showing that there is a genuine issue. *In re Gibson,* 219 B.R. at 198-99.

As to the first two asserted misrepresentations, the Debtor denied in both his affidavit and his deposition that he stated that he would repay the loan from a case that would settle shortly. With respect to the alleged representation by the Debtor that he needed the loan to pay a tax obligation, the Debtor admitted in his affidavit and deposition that he made this statement and that he used $46,000 of the proceeds for this purpose. The Debtor further stated in this regard that he also represented that he needed the money to live on and that the balance of the loan was used for this purpose. Lombardo's affidavit submitted in opposition to the Debtor's summary judgment motion did not contradict the Debtor's statements; rather, Lombardo only stated that the Debtor told him that he needed money to pay past due federal income taxes. Moreover, Prim neither alleged not offered

any evidence that it would not have assisted the Debtor in having Huntington Bank make the loan in the first instance had it known the Debtor was not planning to use the entire proceeds to pay taxes but intended to use some portion for living expenses. Because Prim failed to submit any evidence showing that there was a genuine issue of material fact as to the first two alleged misrepresentations, summary judgment in favor of the Debtor was appropriate.

With respect to the third alleged misrepresentation, Prim's claim that the Debtor promised to pledge his own house as collateral for the loan, the Debtor similarly denied in his deposition making this statement. As previously noted, the bankruptcy court granted the Debtor summary judgment because Prim failed to present any evidence to the contrary. Because there is nothing in the record indicating a genuine issue of fact in this regard, we find no error by the bankruptcy court.

Section 523(a)(6) claim

Prim's second amended complaint asserted that the debt was nondischargeable pursuant to § 523(a)(6). Based on the lack of facts alleged and evidence submitted in support of such a claim, the bankruptcy court also granted the Debtor's summary judgment as to that claim. Prim, however, did not present this issue to the Panel on appeal. Consequently, this issue is abandoned and need not be considered by the Panel. *United States v. Pugh*, 405 F.3d 390, 401 (6th Cir. 2005).

Prim's Theory of Nondischargeability Pursuant to §§ 523(a)(2)(B) and 509

A non-moving party may not raise a new legal theory for the first time in response to the opposing party's summary judgment motion. *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005). The proper procedure is for the party to seek leave to amend its complaint. *Id*. at 788; *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997) (affirming district court's refusal to consider claim that was raised for the first time on summary judgment because plaintiff had been "free to seek leave to amend her complaint").

The Federal Rules of Bankruptcy Procedure incorporate the liberal notice pleading standards of the Federal Rules of Civil Procedure. Fed. R. Bankr. P. 7008. At the summary judgment stage, however, "the liberal pleadings standards . . . are inapplicable." *Tucker*, 407 F.3d at 788 (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). A party may not amend

its complaint through argument in a brief opposing summary judgment. *Gilmour*, 382 F.3d at 1315. To permit a party to do so would subject the Debtor to unfair surprise. *Tucker*, 407 F.3d at 788.

Here, Prim identified only § 523(a)(2) in its second amended complaint as the basis for its cause of action. Prim did not specify whether it was proceeding under § 523(a)(2)(A) or (B). Prim's argument at summary judgment was based on alleged misrepresentations on the Debtor's financial statements to Huntington Bank. Prim did not allege that it relied on those written financial statements in deciding to guarantee the loan. Rather, Prim, for the first time in its response to the motion for summary judgment, claimed that its rights were subrogated to Huntington Bank's rights under § 509 of the Bankruptcy Code. Nowhere in its complaint or its pleadings did Prim refer to subrogation rights under § 509. Prim contends in this appeal that its identification of § 523(a)(2) in its second amended complaint was sufficient to put the Debtor on notice of its theory of nondischargeability based on its subrogation to the rights of Huntington Bank pursuant to § 509. This argument is unpersuasive. Prim should have moved to amend its pleadings or moved to have the pleadings conform to the evidence. It did neither.

Prim's complaint based its nondischargeability claim solely on oral statements of the Debtor allegedly made to it regarding the Debtor's reasons for needing the loan, his ability to repay the loan from settlement proceeds, and his alleged promise to substitute his home as collateral. Nowhere in the complaint did Prim refer to the written financial statements of the Debtor provided to Huntington Bank. Nor did Prim allege that it was subrogated to the rights of Huntington Bank pursuant to § 509. Consequently, the bankruptcy court did not err in finding that the theory was improperly before the court.

Additional Discovery

Courts have broad discretion over the scope of discovery. *See, e.g.*, *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998); *Lewis v. ACB Bus. Servs. Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). An order denying additional discovery "will be grounds for reversal only if it was an abuse of discretion resulting in substantial prejudice." *Lewis*, 135 F.3d at 402. "Courts are particularly skeptical of requests for additional discovery where the moving party has already been accorded ample time and opportunity for discovery." *Valley-Vulcan Mold Co.*, 237 B.R. at 336.

In this appeal Prim argues that the bankruptcy court erred in refusing to permit it to conduct additional discovery after the deadline. Prim states that the additional discovery was necessary in order to substantiate that the Debtor provided Huntington Bank with falsified written financial statements. Unfortunately, no formal order on Prim's motion to compel is found in the record on appeal. The only evidence of the bankruptcy court's ruling is found in its own recitation of the procedural background of this matter in its August 14, 2006, memorandum opinion.

Based on the record on appeal, Prim appears to have had adequate opportunity to conduct discovery. The complaint was filed approximately fourteen months prior to the filing of the Debtor's motion for summary judgment and the discovery deadline was extended twice. Without a record of the bankruptcy court's decision to deny additional discovery, it is impossible to discern whether the court abused its discretion. Additionally, Prim has failed to show that it was substantially prejudiced by the bankruptcy court's denial of additional discovery. Accordingly, we find no basis for reversal of the bankruptcy court's decision in this regard.

## V.  CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is AFFIRMED in all respects.