RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0213p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ARETHA TUCKER,

      *Plaintiff-Appellant,*

    *v.*

UNION OF NEEDLETRADES, INDUSTRIAL, AND
TEXTILE EMPLOYEES et al.,

      *Defendants-Appellees.*

No. 04-3312

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-00707—John R. Adams, District Judge.

Submitted: April 22, 2005

Decided and Filed: May 10, 2005

Before: SUHRHEINRICH and GILMAN, Circuit Judges; ACKERMAN, District Judge.[*]

---

**COUNSEL**

**ON BRIEF:** Diane M. Gonda, GONDA & ASSOCIATES, Cleveland, Ohio, for Appellant. Barry I. Levy, SHAPIRO, BEILLY, ROSENBERG, ARONOWITZ & FOX, New York, New York, Harold A. Ross, ROSS & KRAUSHAAR, Cleveland, Ohio, for Appellees.

---

**OPINION**

---

    RONALD LEE GILMAN, Circuit Judge. Aretha Tucker brought a hybrid claim under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, against her former employer, the Union of Needletrades, Industrial, and Textile Employees (UNITE), and her former union, the Federation of Union Representatives (FOUR), when they refused to arbitrate the grievance that she had filed after being terminated from her employment. Tucker proceeded on a theory that she was a covered employee under the collective bargaining agreement (CBA) between UNITE and FOUR, and that they had violated the terms of the CBA in terminating her and refusing to arbitrate her grievance.

---

[*] The Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

UNITE and FOUR subsequently filed motions for summary judgment, contending that Tucker was not subject to the CBA because she was not an employee of UNITE at the time of her termination. Tucker responded by arguing that UNITE and FOUR were bound by the doctrine of promissory estoppel to the terms of the CBA. The district court granted summary judgment in favor of both defendants.

On appeal, Tucker argues that the district court erred in refusing to consider the merits of her promissory-estoppel argument. The court based its ruling on the fact that Tucker had raised the claim for the first time in opposition to the defendants' motions for summary judgment. It further found that in the two years her case was pending before the district court, Tucker had never attempted to amend her complaint to put the defendants on notice of this new theory of recovery. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

At all times relevant to this appeal, UNITE and FOUR were signatories to the CBA that made FOUR "the exclusive bargaining agent with respect to wages, hours, and other terms and conditions of employment for organizers, business agents, and education staff employed on UNITE[] International['s] payroll for the Chicago and Central States Joint Board." Tucker was hired as a business agent for UNITE in January of 1996. Her wages and benefits were paid by UNITE International, and her W-2 statements listed UNITE as her employer. She also had monthly FOUR dues deducted from her paychecks. UNITE and FOUR concede that Tucker was a covered employee under the CBA during this period of time.

In December of 1997, however, Tucker's employment situation changed. Although she remained a business agent, she became an employee of the Chicago and Central States Joint Board. The Joint Board is a subordinate affiliate of UNITE, with a separate legal existence and its own staff and budget. Tucker's wages and benefits were thereafter paid by the Joint Board, and her W-2 statements listed the Joint Board as her employer.

Employees of the Joint Board were not subject to the CBA between UNITE and FOUR. Although a bookkeeping error by the Joint Board resulted in monthly FOUR dues continuing to be deducted from Tucker's paychecks for nearly four years after she ceased her employment with UNITE and went to work for the Joint Board, the dues were never sent to FOUR. When the Joint Board learned of this error, it immediately refunded the full amount to Tucker, who accepted the refund.

Tucker was involuntarily terminated from her employment with the Joint Board in November of 2001. She filed a grievance with FOUR that challenged her termination, and FOUR initially accepted the grievance. When FOUR contacted UNITE, however, UNITE refused to arbitrate. UNITE insisted that, at the time of her termination, Tucker was an employee of the Joint Board and not a UNITE employee.

FOUR initially challenged UNITE's assertion that Tucker was not subject to the CBA. In written correspondence with Tucker's attorney, FOUR stated that "should a court find that Ms. Tucker was covered by the collective bargaining agreement, and thus entitled to arbitration, then FOUR will undertake to pursue the discharge arbitration on her behalf." Believing that her grievance would be arbitrated, Tucker refused the eight months of severance pay that she had been offered by the Joint Board to settle her claim.

Tucker ultimately filed suit in the United States District Court for the Northern District of Ohio, seeking to compel UNITE and FOUR to arbitrate her grievance. As part of its answer to the

complaint, FOUR contended for the first time that it was not required to arbitrate Tucker's grievance because she was an employee of the Joint Board and not subject to the CBA between UNITE and FOUR. Then, following almost a year of discovery, the district court granted summary judgment in favor of UNITE and FOUR, finding that Tucker was not covered by the CBA because she was not an employee of UNITE. The district court refused to consider Tucker's promissory-estoppel argument because she had failed to raise this claim in her pleadings. This timely appeal followed. Upon Tucker's motion filed in April of 2004, UNITE was dismissed as a defendant in the present appeal.

## II. ANALYSIS

### A.    Standard of review

This court reviews a district court's grant of summary judgment de novo. *Minadeo v. ICI Paints*, 398 F.3d 751, 756 (6th Cir. 2005). Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B.    Tucker's promissory-estoppel claim

Tucker contends that the district court erred when it refused to consider her promissory-estoppel claim. The court took this action after determining that she had neglected to include such a claim in her complaint. In so holding, Tucker argues, the district court failed to look beyond the labels in her pleading and ignored the mandate of the Federal Rules of Civil Procedure, which "direct[] courts to construe pleading[s] liberally within the standards of the notice-pleading regime." *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001) (observing that "the fundamental tenor of the Rules is one of liberality rather than technicality") (citation and quotation marks omitted).

Tucker's argument, however, misses the mark. If her case had been dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, then we would indeed be governed by the liberal notice-pleading requirements that she invokes in her brief. *See Minger*, 239 F.3d at 799-800 (applying the "extremely modest standard" of Rule 12(b)(6) in evaluating a complaint and reversing the district court's dismissal of the case). But Tucker's case was disposed of at the summary judgment stage, nearly two years after Tucker filed her complaint.

This difference in timing is crucial. A motion to dismiss typically occurs early in the course of litigation, well before discovery has been completed. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) ("The very purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.") (citation and quotation marks omitted). In contrast, a motion for summary judgment may not be granted until a plaintiff has had an opportunity for discovery. And if a plaintiff decides to advance a new claim as a result of such discovery, liberal amendment of the complaint is provided for by Rule 15(a) of the Federal Rules of Civil Procedure, which states that leave to amend the complaint "shall be freely given when justice so requires."

The Federal Rules of Civil Procedure therefore provide for liberal notice pleading at the outset of the litigation because "[t]he provisions for discovery are so flexible" that, by the time a case is ready for summary judgment, "the gravamen of the dispute [has been] brought frankly into

the open for inspection by the court." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002) (noting that the "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims") (citation and quotation marks omitted).

Once a case has progressed to the summary judgment stage, therefore, "the liberal pleading standards under *Swierkiewicz* and [the Federal Rules] are inapplicable." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that a plaintiff could not raise a new claim in response to a summary judgment motion); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723 (3d ed. Supp. 2005) ("A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a).").

To permit a plaintiff to do otherwise would subject defendants to unfair surprise. *See Guiffre v. Local Lodge No. 1124*, No. 90-3540, 1991 WL 135576, at *5 (6th Cir. July 24, 1991) (unpublished) (refusing to hear claims raised for the first time in opposition to summary judgment because, "[h]aving received no notice of them, the defendants had no opportunity to investigate them when they conducted their own discovery"); *see also EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001) (stating that even under the liberal notice-pleading regime, the Federal Rules of Civil Procedure still require "that the complaint give the defendant fair notice of the claim and its supporting facts").

Nowhere in her complaint did Tucker allege that FOUR should be estopped from refusing to arbitrate her grievance. Even construing the allegations in her complaint as generously as possible, the only claim that she asserted was that "[p]ursuant to [her] employment with UNITE[,] Tucker was subject to and covered by the terms of the . . . collective bargaining agreement." *See Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001) (holding that the courts should "not rely solely on labels in a complaint, but . . . probe deeper and examine the substance of the complaint").

A review of the record in the present action reveals that Tucker did not raise her promissory-estoppel claim until approximately a year after the filing of her complaint, and that it was in her response to the motions for summary judgment filed by UNITE and FOUR. She then had another year to seek an amendment to her complaint before the district court granted summary judgment in favor of the defendants. Tucker bases the promissory-estoppel claim on her alleged reasonable reliance upon a letter she received from FOUR's counsel, assuring her that her claim would be arbitrated, and upon the fact that FOUR dues had been deducted from her pay for nearly four years when she was employed by the Joint Board. But these facts were within her knowledge well before she filed her complaint in the district court. *See Sherman v. Ludington*, No. 91-3936, 1992 WL 158878, at *1 (6th Cir. July 7, 1992) (unpublished) (refusing to permit the amendment of a complaint at the summary judgment stage because "the facts which formed the basis of plaintiff's 'new claims' were known to him from the time the original complaint was filed and should have been apparent from the outset") (citation omitted).

The district court found that, in opposing summary judgment, Tucker had advanced new claims "that were never plead," and that there was "nothing in [her] Complaint to put Defendants on notice" of her promissory-estoppel claim. Because of its finding that Tucker "had the information on which to base these claims in her initial Complaint, or she could have amended her complaint early on in this litigation," the district court refused to consider her promissory-estoppel claim. *See Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997) (affirming the district court's refusal to consider a new claim that was raised for the first time on summary judgment because the plaintiff had been "free to seek leave to amend her complaint"); *cf. Vencor Inc. v.*

*Standard Life & Accident Ins. Co.*, 317 F.3d 629, 641 n.11 (6th Cir. 2003) (reviewing a promissory-estoppel claim that was raised for the first time in opposition to summary judgment, but where the district court had reached the argument only after finding that the defendant had been on notice of the plaintiff's claim well before the summary judgment stage).

Admittedly, the evidence in the present case suggests that Tucker may indeed have had a colorable promissory-estoppel argument. And she might have a cause of action against her attorney for failing to amend her complaint before the summary judgment stage, but such a claim is not before us. *Cf. McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt Inc.*, 298 F.3d 586, 595 (6th Cir. 2002) (holding "that out-and-out lawyer blunders—the type of action or inaction that leads to successful malpractice suits by the injured client—do not qualify as 'mistake' or 'excusable neglect' within the meaning of Rule 60(b)(1)") (citation and quotation marks omitted). We therefore conclude that the district court did not err in refusing to consider the merits of Tucker's promissory-estoppel claim.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.