**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0331n.06
Filed: May 11, 2007

**Nos. 06-1252, 06-1253**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **TONYA POWELL-LEE**, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| **HCR MANOR CARE, HEALTH CARE AND** | ) | **MEMORANDUM** |
| **RETIREMENT CORPORATION OF AMERICA** | ) | **O P I N I O N** |
| **d/b/a HEARTLAND HEALTH CARE CENTER -** | ) | |
| **PLYMOUTH COURT,** | ) | |
| | ) | |
| Defendants-Appellees, | ) | |
| and | ) | |
| | ) | |
| **DARYL ADAMS**, | ) | |
| | ) | |
| Defendant. | ) | |

**BEFORE:** **GUY, COLE and McKEAGUE, Circuit Judges.**

**PER CURIAM.** Plaintiff Tonya Powell-Lee was an employee of defendant HCR Manor Care in the medical records department at a long-term care facility in Plymouth, Michigan, known as Heartland Health Care Center – Plymouth Court. On March 24, 2004, she was undisputedly subjected to sexual harassment by a custodian at Plymouth Court, Daryl Adams, when he exposed himself to her. Not only was Adams immediately discharged, but plaintiff's employment terminated

shortly thereafter as well. Whether Powell-Lee resigned or was involuntarily discharged is controverted.

In this action, she asserts six claims under Michigan law, alleging that her employer HCR Manor Care ("HCR") is liable for sex discrimination and sexual harassment, unlawful retaliation, violation of Michigan's Whistleblowers' Protection Act, and intentional infliction of emotional distress. The district court awarded summary judgment to HCR on all claims, holding that plaintiff had failed to establish a genuine issue of material fact on any of her claims. In so ruling, the district court denied plaintiff's request for leave to amend her complaint so as to add a claim against HCR for its negligent supervision, retention and training of Adams. The district court's opinion is well-reasoned. On appeal, plaintiff has not asserted any argument that is not adequately and properly addressed in the district court's ruling. Accordingly, for the reasons that follow, we affirm the judgment of the district court.

## I

Plaintiff's count I sex discrimination claim under Michigan's Elliott-Larsen Civil Rights Act, M.C.L. §§ 37.2101 *et seq.*, is premised on the same wrongful conduct by co-worker Daryl Adams as her count III hostile environment harassment claim. The district court recognized that Michigan's Elliott-Larsen Civil Rights Act includes sexual harassment as a form of prohibited "discrimination because of sex." *See Chambers v. Trettco, Inc.*, 463 Mich. 297, 310, 614 N.W.2d 910 (2000) (citing M.C.L. § 37.2103(i)). Because plaintiff has not alleged any form of disparate treatment apart from Adams' harassment, the district court concluded that plaintiff's general sex discrimination claim is

essentially redundant of and subsumed within her more specific count III claim for hostile environment harassment.

The district court's analysis is clearly proper. If plaintiff were able to prevail on either of the sexual harassment theories set forth in counts II and III, she would have established that she was subjected to the only form of "sex discrimination" facially made out by the fact allegations of her complaint. The separate count I sex discrimination claim is entirely superfluous. To the extent, moreover, that plaintiff sought to amend her complaint via argument in opposition to the motion for summary judgment, the district court properly rejected the attempt. *See Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (recognizing that the defendant would otherwise be subject to unfair surprise). We find no error in the district court's dismissal of the count I claim.

## II

The district court awarded summary judgment to defendant HCR on plaintiff's count II claim for *quid pro quo* sexual harassment for lack of evidence that HCR used plaintiff's submission to or rejection of Adams' unwelcome sexual conduct or communication as a factor in decisions affecting her employment. Plaintiff has not specifically challenged this ruling on appeal, and we find no error in it.

## III

Count III of plaintiff's complaint asserts a sexual harassment claim based on a hostile work environment theory. That is, plaintiff alleges that HCR, through its failure to effectively respond to knowledge of Adams' harassing conduct during the period 2001 to 2004, created a hostile work

environment that interfered with her work and culminated in the March 2004 incident that precipitated termination of her employment. The district court concluded that HCR could not be liable in *respondeat superior* because the record demonstrated that HCR investigated and took prompt and appropriate remedial action when notified of Adams' misconduct. Plaintiff contends the district court erred in this conclusion. She contends the court, in assessing HCR's knowledge of and response to Adams' misconduct, improperly confined its consideration to plaintiff's complaints to management and failed to consider *other* employees' complaints about Adams. If the entire record is reviewed in the light most favorable to her as nonmovant, she contends, then HCR's response to Adams' pervasive harassing conduct is revealed to have been inadequate.

The record makes it clear that HCR had, from October 2001 to February 2004, received several reports, from several employees, of unusual behavior by Daryl Adams. Most of the complaints related to staring or peeping behavior; some concerned inappropriate comments. Some of the complaining employees clearly viewed Adams' behavior as annoying, harassing, even intimidating. HCR was on notice of a substantial probability that harassing conduct was occurring. However, to satisfy the *respondeat superior* element of her claim, plaintiff was obliged to present evidence that HCR's response was, in the face of this knowledge, inadequate, i.e., that its "response manifested indifference or unreasonableness." *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999) (addressing racial harassment claim under Elliott-Larsen Civil Rights Act). The appropriateness of HCR's response must be judged in light of "the frequency and severity of the alleged harassment." *Id.* "Generally, a response is adequate if it is reasonably calculated to end the harassment." *Id.*

Insofar as the district court, in evaluating the frequency and severity of the reported misconduct, failed to consider complaints of employees other than plaintiff, we find this shortcoming inconsequential. Even if the complained-of incidents of staring are characterized as "frequent," and "harassing," HCR's response cannot be deemed to have manifested "indifference or unreasonableness." Rather, HCR appears to have taken the complaints quite seriously. HCR conducted investigations, suspending Adams at least three times; counseled Adams several times, forbidding him from working on the floor where plaintiff worked; ordered him to attend a sexual harassment in-service training program; and applied its progressive discipline procedure (verbal and written warnings). After the initial complaints by plaintiff in late 2001, these measures seemed to have worked so well that in July 2002, plaintiff had no objection to Adams resuming work on her floor. Thereafter, in fact, she had no complaints about Adams' behavior again until the March 2004 incident that precipitated his immediate termination. Yes, complaints from other employees had begun to surface again in late 2003, demonstrating that Adams' staring problem had not been satisfactorily corrected. Yet, HCR responded appropriately in January 2004 by suspending Adams and issuing a third and final written warning.

Accordingly, we find no error in the district court's holding that no reasonable jury could conclude that defendant failed to adequately investigate and take prompt and appropriate remedial action when notified. For lack of evidence to satisfy the *respondeat superior* element of plaintiff's hostile environment harassment claim, HCR was properly awarded summary judgment on count III of the complaint.

**IV**

In count IV, plaintiff complains that she was subjected to unwarranted discipline and eventually discharged from employment because she complained of Adams' harassment, constituting unlawful retaliation under the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2701(a). In count V, she alleges that the same retaliatory conduct by defendant makes out a violation of Michigan's Whistleblowers' Protection Act, M.C.L. §§ 15.361 *et seq.* The district court analyzed the proofs presented in support of both claims together since the essential elements of both claims are the same for purposes of this case. The court evaluated the record evidence under the appropriate standards and concluded that the proofs failed to substantiate a causal connection between any protected activity plaintiff engaged in and any adverse employment action taken by HCR.

Plaintiff relies primarily on two items of evidence. The "unwarranted discipline" relied on by plaintiff refers to a March 17, 2004 notice of rule violation plaintiff received from her supervisor, Director of Nursing Karen Fairchild. The notice stemmed from a March 12 altercation between the two women, which culminated in raised voices in the workplace and a touching or grabbing of plaintiff's arm or shoulder by Fairchild. After plaintiff left Plymouth Court for the day, she drove to the local police station where she reported that she'd been assaulted by Fairchild. The subsequent notice of rule violation cited plaintiff for arguing with Fairchild in a residents' area and for making a "false accusation of harassment."

As the district court observed, contrary to plaintiff's allegations and arguments, this discipline clearly had nothing to do with plaintiff's past allegations of sexual harassment by Adams. By her own admission, plaintiff had not made any report of harassment by Adams since May 2002. The March 17 notice grew out of plaintiff's altercation with Fairchild on March 12, when she told

Fairchild "she was tired of being harassed" (i.e., in connection with methods of intra-office communication); and the alleged false accusation of harassment pertained to plaintiff's report to police that Fairchild had assaulted her. Inasmuch as the March 17 discipline had nothing to do with reports of *sexual* harassment, it offers no support for plaintiff's claim that she was discharged because she engaged in the asserted protected activity, i.e., complaints about sexual harassment by Adams. The district court correctly concluded that there was no causal nexus between the two.

The second item relied on by plaintiff is a statement allegedly made to her by Plymouth Court Administrator Jennifer Pressman on March 24, 2004, shortly after Adams had exposed himself — a statement to the effect that, because the police had been called, there would be disciplinary action. Plaintiff had just finished giving her statement to the police, was upset, and wanted to go home. Pressman was trying to persuade plaintiff to remain at Plymouth Court until HCR's attorney arrived because her charge of indecent exposure, serious enough to report to the police, was also serious enough to result in significant disciplinary action, "not excluding termination." Most plausibly construed, Pressman's statement meant that, assuming the charge was truthful, *Adams* would be subject to discipline, possibly termination. This construction is corroborated by Pressman's reassurance to plaintiff that it would be in her best interest to stay and give a statement to HCR's attorney. It is also corroborated by Pressman's affidavit, in which she affirmatively states (a) that she never advised Ms. Powell-Lee that *she* could or would be disciplined for reporting to the police that Adams had exposed himself; and (b) that Ms. Powell-Lee's having contacted the police played no role in any employment decisions.

Plaintiff claims to have understood the statement differently — as though it implied that *she* could be subject to discipline for having reported the misconduct to the police. Even assuming plaintiff genuinely understood Pressman's statement as she now asserts, her construction is simply implausible. The court's obligation to view the record in the light most favorable to the party opposing a motion for summary judgment does not require the court to draw inferences that simply make no sense or are unreasonable. Moreover, *plaintiff's* understanding of what Pressman meant is entitled to little probative weight in establishing the element at issue, i.e., that her *employer's* subjective motivation in discharging her was retaliatory. Pressman's alleged statement, implausibly construed by plaintiff to convey a meaning contrary to Pressman's own more plausible understanding of what she intended, represents no more than a mere scintilla of evidence of the subjective motivation underlying her discharge. It is insufficient to support a reasonable jury finding that plaintiff was terminated for reporting Adams' indecent exposure to the police.

Accordingly, we find no error in the district court's award of summary judgment to HCR on plaintiff's retaliation claims. The record plainly contains insufficient evidence of a causal nexus between plaintiff's asserted protected activity and any adverse employment action taken against her.[1]

**V**

---

[1]This result effectively renders HCR's cross-appeal moot. In its cross-appeal, HCR contends the district court erred in concluding there is a genuine fact issue regarding whether plaintiff resigned or was involuntarily discharged. We agree with the district court that the record is controverted on this issue. Yet, even assuming plaintiff was involuntarily discharged, HCR was properly awarded summary judgment on plaintiff's retaliation claims for lack of evidence that any protected activity she assertedly engaged in played a significant causal role in HCR's decision to discharge her.

The district court also found insufficient the factual support for plaintiff's count VI claim against HCR for intentional infliction of emotional distress. Under Michigan law, an employer is generally not vicariously liable for the acts or torts of an employee that are committed beyond the scope of the employer's business. *Zsigo v. Hurley Medical Center*, 475 Mich. 215, 221 (2006). Although Adams' conduct in exposing himself on March 24, 2004 was disturbing and may have caused plaintiff emotional distress, Adams was clearly acting outside the scope of his employer's business. The fact that Adams was aided in accomplishing the tort by the existence of his employment relationship with HCR is insufficient to bring his tortious conduct within the scope of his employer's business. *Id*. at 231. Accordingly, the district court's judgment, awarding summary judgment to HCR on plaintiff's claim for intentional infliction of emotional distress, must be affirmed.

## VI

Finally, plaintiff contends the district court erred by denying her request for leave to amend her complaint so as to state a claim against HCR for negligent supervision, retention and training of Daryl Adams. Noting that leave to amend is to be freely granted when justice so requires, Fed. R. Civ. P. 15(a), the district court denied plaintiff's request essentially because it found no justification for plaintiff's delay in seeking to amend until after discovery had closed and after HCR's dispositive motion had been filed.

The district court's denial of leave to amend is reviewed for abuse of discretion. *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002). Ordinarily, delay alone does not justify denial of leave to amend. *Id*. at 800. At some point, however, delay becomes "undue," placing an

unwarranted burden on the court, and becomes "prejudicial," placing an unfair burden on the opposing party. *Id.* Considering the totality of the circumstances, the district court did not abuse its discretion in concluding that plaintiff's delay in seeking leave to amend was undue.

## VII

On full consideration of the record, it is apparent that none of the claims asserted by plaintiff, stemming from Daryl Adams' misconduct, find sufficient factual support to afford plaintiff a triable cause of action against HCR. Accordingly, the district court's summary judgment is **AFFIRMED** in all respects.