NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0240n.06

No. 23-1699

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jun 05, 2024
KELLY L. STEPHENS, Clerk

OPERATING ENGINEERS' LOCAL 324 FRINGE
BENEFIT FUNDS, et al.,

    Plaintiffs - Appellants,

v.

RIETH-RILEY CONSTRUCTION CO., INC.,

    Defendant - Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

OPINION

_____

Before: BOGGS, KETHLEDGE, and MURPHY, Circuit Judges.

KETHLEDGE, J., delivered the opinion of the court in which MURPHY, J., joined in full, and BOGGS, J., joined in part. BOGGS, J. (pp. 7–9), delivered a separate opinion concurring in part and dissenting in part.

KETHLEDGE, Circuit Judge. Seven fringe-benefit funds sued an employer, Rieth-Riley Construction Company, demanding an audit of records related to contributions that Rieth-Riley had paid the funds pursuant to an expired collective-bargaining agreement. The district court granted summary judgment to Rieth-Riley, holding that the funds' claims under the Employee Retirement Income Security Act (ERISA) and the Labor Management Relations Act (LMRA) failed because both statutes require an active contract. The funds appeal. We affirm.

I.

Rieth-Riley is a construction company. Before 2013, Rieth-Riley joined a trade group, the Michigan Infrastructure and Transportation Association ("MITA"), which hired workers from a

union, the Operating Engineers' Local 324. When it joined the trade group, Rieth-Riley granted MITA the power of attorney and authorized it to negotiate with Local 324 on Rieth-Riley's behalf.

In March 2013, MITA signed a multiemployer collective-bargaining agreement with Local 324 ("the CBA"). Rieth-Riley was a party to the CBA, which obligated employers to make periodic fringe-benefit contributions to the Operating Engineers' Local 324 Fringe Benefit Funds ("the Funds") and to cooperate with the terms of the Funds' trust agreements. The terms of the trust agreements, in turn, required employers to produce records for an audit at the Funds' demand. Rieth-Riley made timely contributions as required.

Five years later, MITA told Local 324 that it intended to terminate the CBA on June 1, 2018. In response, Local 324 both accepted MITA's termination and terminated the CBA, effective June 1, 2018, as to "each and every" employer that had granted MITA the power of attorney, including Rieth-Riley. After termination, Local 324 refused to negotiate with MITA or with employers that had granted MITA the power of attorney, including Rieth-Riley.

Yet Rieth-Riley attempted to continue contributing to the Funds. At first, the Funds refused to accept those contributions, thinking that the relationship between Rieth-Riley and Local 324 was then governed by § 8(f) of the National Labor Relations Act. Section 8(f) does not obligate employers and unions to bargain for a new agreement or maintain the "status quo" during negotiations. 29 U.S.C. § 158(f). Thus, for five months, each time Rieth-Riley sent contributions to the Funds, the Funds responded that they had "no legal basis for accepting contributions without a written agreement between" Rieth-Riley and Local 324. Rieth-Riley also offered to enter into an agreement with the Funds themselves, but the Funds rejected that offer.

Rieth-Riley's attempts to bargain with Local 324 likewise failed, even after Rieth-Riley rescinded its power of attorney with MITA. But in October 2018, Rieth-Riley and Local 324

realized that their relationship was governed by § 9(a) of the Act, rather than by § 8(f). When a collective-bargaining agreement expires, § 9(a) obligates the parties to maintain the status quo—including continuing fund contributions—and to bargain in good faith. 29 U.S.C. §§ 158(a)(5), (d); 159(a). Here, after the parties realized their mistake, the Funds began accepting Rieth-Riley's post-expiration contributions, and Local 324 and Rieth-Riley began to bargain in good faith. (They have not signed a new collective-bargaining agreement.)

A year later, on October 1, 2019, the Funds sent Rieth-Riley a letter requesting an audit of its payroll records. The letter primarily asked for post-expiration records but included a request for pre-expiration records from three locations. Rieth-Riley produced some of the requested records but not all.

The Funds then brought this suit, alleging that Rieth-Riley "maintains indebtedness to the Funds for work performed by its employees from August 1, 2019 onward[,]" and that Rieth-Riley "may owe additional money to the Funds based on other work performed by employees of Defendant or work of its subcontractors[.]" As relief the Funds requested, among other things, that Rieth-Riley produce "all books and records necessary for the Funds to determine" amounts Rieth-Riley owed to the Funds.

The district court thereafter dismissed the case for lack of jurisdiction, holding that the parties' obligations were governed by § 9(a) of the Act and hence that the National Labor Relations Board had exclusive jurisdiction over the claims in this case. *See Operating Eng'rs' Loc. 324 Fringe Benefit Funds v. Rieth-Riley Constr. Co.*, 517 F. Supp. 3d 675 (E.D. Mich. 2021). We reversed. *See Operating Eng'rs' Loc. 324 Fringe Benefit Funds v. Rieth-Riley Constr. Co.*, 43 F.4th 617 (6th Cir. 2022). On remand, the Funds argued—for the first time in this litigation—that their Complaint sought records from before the CBA's expiration, rather than just afterward. But

the district court again granted summary judgment to Rieth-Riley, holding that the Funds had failed to plead a claim for pre-expiration records; and that the Funds' claim for post-expiration records failed because Rieth-Riley and the Funds no longer had any agreement then. This appeal followed.

## II.

We review the grant of summary judgment de novo. *Miles v. S. Cent. Hum. Res. Agency*, 946 F.3d 883, 887 (6th Cir. 2020).

## A.

The Funds challenge the district court's holding that they failed to plead a claim for pre-expiration records relating to Rieth-Riley's contributions to the Funds. Specifically, the district court held, "that is not the audit the plaintiffs requested in their pleadings"; and the court observed that, "until now, the Funds have framed their audit demand exclusively in terms of investigating Rieth-Riley's alleged delinquency that arose after August 1, 2019." *Operating Eng'rs' Loc. 324 Fringe Benefit Funds v. Rieth-Riley Constr. Co.*, 681 F. Supp. 3d 746, 764 (E.D. Mich. 2023).

The Funds conceded that they never mentioned their putative claims for pre-expiration records until after we remanded this case to the district court. Nor do the Funds dispute the district court's observation that, "until now"—meaning the summary-judgment stage—the Funds had not asserted that their Complaint included a claim for those records. By then the parties had completed discovery, which means that assertion of a new claim would subject the defendant to "unfair surprise." *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005). Hence the courts do not construe a complaint as liberally at the summary-judgment stage as at the pleadings stage. *Id.*

The critical allegations of the Complaint here are in Paragraphs 18 and 19. Paragraph 18 said that "[o]n October 1, 2019"—more than a year after the CBA ended—"the Funds through their

auditors requested Defendant to produce records for an audit of Defendant." The Complaint did not specifically mention the Funds' letter of that date; nor did the Funds attach the letter to the Complaint. Meanwhile, Paragraph 19 said what the district court said it did: that Rieth-Riley "maintains indebtedness to the Funds for work performed by its employees from August 1, 2019 onward *when Defendant began selectively paying contributions for some but not all of its employees performing covered work*." (Emphasis added.) The Complaint thus said—or at least strongly suggested—that Rieth-Riley's "indebtedness" began on August 1, 2019. For the Complaint also specified a *reason* why that date marked the commencement of Rieth-Riley's liability: namely, because that was "when Defendant began selectively paying contributions." Am. Compl., ¶ 19, R. 12, PageID 68. And otherwise the Complaint never said that Rieth-Riley underpaid contributions before the CBA expired.

The Funds now point to language in the Complaint that sought production of records necessary to determine Rieth-Riley's liability from "dates requested[.]" And the Funds say that "dates requested" means dates requested in the audit letter—dates included nowhere in the Complaint. Here—given what the Complaint said and did not say—we agree with the district court that the Complaint did not state a claim for pre-expiration records. *See Kensu v. Corizon, Inc.*, 5 F.4th 646, 651 (6th Cir. 2021); *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019).

## B.

The parties otherwise agree that—for the Funds to proceed on their claim for an audit of post-expiration records under ERISA and LMRA—the Funds must present evidence of an existing contract that obligates Rieth-Riley to make contributions to the Funds. *See generally Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 464 (6th Cir. 1989). As the district

court emphasized, that "the Funds actually *rejected*" Rieth-Riley's contributions after expiration of the CBA is strong evidence that the Funds thought no agreement existed then. *Operating Eng'rs' Loc. 324 Fringe Benefit Funds*, 681 F. Supp. 3d at 761.

Yet the Funds point to what they say are three potential sources of an unexpired contractual obligation to contribute. The first is the language of the trust agreements themselves. But Rieth-Riley never signed those agreements—rather, its obligation to comply with them came from the CBA. And we agree with the district court that, once the CBA expired and no new agreement was signed, the trust agreements became "incognizable." *Cent. States, Se. & Sw. Areas Pension Fund v. Gen. Materials, Inc.*, 535 F.3d 506, 509 (6th Cir. 2008).

The Funds remaining sources of contractual obligation—namely, some certification language at the bottom of Rieth-Riley's contribution reports and Rieth-Riley's conduct—both fail for the same reason. Namely, neither of those sources provides evidence of any *mutual* assent to continue a contractual relationship between Rieth-Riley and Local 324 or the Funds. Nor can the Funds point to conduct required by § 9(a)'s "duty to maintain the status quo" to show assent. *Michigan Bricklayers & Allied Craftsmen Health Care Fund v. Nw. Const., Inc.*, 116 F.3d 1480, at *2 (6th Cir. 1997) (table). Labor contracts require mutual assent. *Bobbie Brooks, Inc. v. Int'l Ladies' Garment Workers Union*, 835 F.2d 1164, 1168 (6th Cir. 1987). And suffice it to say that, though the record includes plenty of evidence that Rieth-Riley wanted to continue contracting, it includes zero evidence that the Funds or Local 324 did. The district court was correct to grant summary judgment on the Funds' claim for an audit of post-expiration records.

\*        \*        \*

The district court's judgment is affirmed.

BOGGS, Circuit Judge, concurring in part and dissenting in part. I concur with the majority's opinion except with respect to Part II.A. The key issue, in my view, is whether a party who received, read, and responded to a one-page letter is unfairly surprised when the sender seeks to enforce the exact terms of that letter. I think not, but the majority apparently disagrees, concluding that the Funds have not pleaded a claim to audit Rieth-Riley's pre-termination contributions. To adequately plead a claim, a plaintiff must "allege facts supporting an inference that the defendant's liability is plausible, rather than just possible." *In re E.I. du Pont de Nemours & Co. C-8 Personal Injury Litig.*, 87 F.4th 315, 320 (6th Cir. 2023). The Funds have done more than enough here to meet that standard for Rieth-Riley's pre-termination contributions.

The Complaint alleges that "[o]n October 1, 2019, the Funds through their auditors requested Defendant to produce records." There is no dispute that this sentence refers to a letter sent by the Funds (through their auditor) to Rieth-Riley on October 1, 2019. There is no dispute that this letter requested, among other things, records from January 2017 to October 1, 2019, for Rieth-Riley's Charlevoix and Lansing locations and records from January 2016 to October 1, 2019, for Rieth-Riley's Ada location. And there is no dispute that Rieth-Riley knew about the letter. Indeed, it responded by producing some of the requested documents. The Complaint simply wants the rest of them.

Even if there were a dispute, the Funds adequately pleaded their claim to enforce the request in the letter. The majority disagrees by faulting the Funds for failing to attach the audit letter to the Complaint. But a plaintiff is not required to attach to his complaint every document on which the claim depends. *See, e.g.*, *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *Beus Gilbert PLLC v. Donald L. Robertson Tr.*, 859 F. App'x 234, 238 (10th Cir. 2021); *Richards Indus. Park,*

*LP v. FDIC*, 572 F. App'x 499, 502–03 (9th Cir. 2014); *Jarrells v. Select Pub., Inc.*, 35 F. App'x 265, 265 (7th Cir. 2002). This rule applies with particular force when the document in question is inextricably tied to the underlying allegations and when its existence and circumstances are not in dispute. *Cf. Beddall*, 137 F.3d at 17 (explaining that a district court may consider certain unattached documents in ruling on a Rule 12(b)(6) motion to dismiss). Such is the case here. The Complaint itself is not an audit request. Rather, it seeks to enforce a previously made audit request. And this previously made audit request (for the period before the CBA's termination) arose as a contractual right for the Funds and obligation for Rieth-Riley. The majority appears not to dispute this. Further, Rieth-Riley does not dispute the content or authenticity of the letter. Nor does it dispute that it responded to the letter by producing some but not all of the requested documents. I do not see how a party can be unfairly surprised by a claim that references a document that the party not only received but answered.

Although we have said that liberal pleading rules do not apply at summary judgment, *see Tucker v. Union of Needletrades, Indus., & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005), we have on numerous occasions allowed filings at the summary-judgment stage to clarify supposedly ambiguous claims that do not unfairly surprise the defendant. *See, e.g.*, *Moore v. City of Harriman*, 272 F.3d 769, 774 (6th Cir. 2001) (en banc) ("Subsequent filings in a case may rectify deficiencies in the initial pleadings."); *Carter v. Ford Motor Co.*, 561 F.3d 562, 566 (6th Cir. 2009); *Copeland v. Regent Elec., Inc.*, 499 F. App'x 425, 435 (6th Cir. 2012); *Howington v. Quality Rest. Concepts, LLC*, 298 F. App'x 436, 442 n.6 (6th Cir. 2008). And I do not see how Rieth-Riley is unfairly surprised here.

The majority asserts that the surprise arises because the Complaint never alleges that Rieth-Riley has incurred pre-termination indebtedness. But of course, we are concerned with unfair

surprise at the summary-judgment stage only in the situation where a plaintiff asserts a *new* claim. And to my mind, the pre-termination claim is not new. The majority points to Paragraph 19 of the Complaint, in which the Funds allege that Rieth-Riley "maintains indebtedness to the Funds for work performed by its employees from August 1, 2019 onward when Defendant began selectively paying contributions for some but not all of its employees performing covered work." But immediately after this sentence, the Complaint states that "Defendant may owe *additional* money to the Funds . . . the amount of which can only be determined *through Defendant producing records that the Funds requested to enable completion of the requested audit*." (Emphasis added.) The purpose of the Funds' complaint is simply to compel "completion of the requested audit"—i.e., the one and only audit at issue in this litigation: the one requested in the October 1, 2019, audit letter. I do not think that Rieth-Riley can now claim to be unfairly surprised when the Funds, after a general remand by this court, attempted to enforce this letter that the Funds adequately incorporated into their complaint and of which Rieth-Riley was well aware. I therefore respectfully dissent from Part II.A of the majority's opinion.